## KANSAS CITY STRUCTURAL STEEL CO. et al. v. PETTY et al.

No. 19118. Opinion Filed Jan. 21, 1930.

·Commissioners' Opinion, Division No. 2.

R. V. Lewis and Burford, Miley, Hoffman & Burford, for petitioners.

Fred E. Suits, for respondent.

DIFFENDAFFER, C. This is an original action filed in this court to review an award of the State Industrial Commission entered on the 30th day of December, 1927, wherein respondent, R. L. Petty, was awarded 22 weeks' compensation of $15.39 per week for temporary total disability, and 25 weeks' compensation of $15.39 per week for permanent partial disability.

It is conceded that respondent was injured under circumstances entitling him to compensation ·under the provisions of the Workmen's Compensation Act. Respondent was employed by the Kansas City Structural Steel Company in the construction of a steel tank. The Globe Indemnity Company was the insurance carrier. While so engaged, respondent fell from the top to the floor of said tank, a distance of about 33 feet. The accident occurred April 18, 1927. The injuries received were to respondent's hip and eye. He was rendered unconscious; was taken immediately to a hospital; remained unconscious for several days. He was in the hospital three or four weeks, after which time he was removed to Oklahoma City, where his injuries were treated for sometime. Compensation was paid from April 24th to September 24, 1927, at which time payment was stopped, and the cause set for hearing on motion of petitioner to discontinue compensation, as of September 24th. Hearing was had, and at the close thereof the State Industrial Commission found:

"That the claimant while in the employment of the respondent herein fell some 30 feet to the bottom of a steel tank causing injury to his left hip, side, and back, also injury to left arm causing numbness to the third and fourth fingers of the left hand; that a piece of steel struck the claimant on the head causing him to be unconscious for a period of five days; that due to the multiple injuries received the claimant was temporarily totally disabled for a period of 22 weeks, for which compensation has been paid in the sum of $338.53, covering the entire period of temporary total disability. The Commission further finds that by reason of the aforementioned accident, that claimant has double vision in the left eye, when looking downward and to the right, and that the double vision causes an impairment of vision amounting to 25 per cent. total loss of use of the left eye"

—and ordered:

"That within ten days from this date the respondent or insurance carrier herein pay to the claimant herein the sum of $15.39 per week from April 18, 1927, to September 24, 1927, less the five-day waiting period, less any sums heretofore paid, and to continue said compensation for a period of 25 weeks at the rate of $15.39 per week, same being computed from September 24, 1927, being in the aggregate sum of $384.75, to be paid in weekly installments."

Petitioners bring this action to review the award, and present four propositions: Under the first proposition, petitioners assert that, under claimant's own testimony at its fullest extent, he was totally disabled for a period of no longer than three months. While petitioners do not so directly assert in their brief, we gather from their argument that their claim is, assuming that claimant was entitled to compensation for temporary total disability, and also for permanent partial disability, which they vehemently deny under another proposition, the award therefor was excessive under claimant's own testimony. In this connection, they point out that he testified:

"Q. How long were you disabled and prevented from performing any work on account of the injury to the hip? A. About three months."

And therefrom petitioners argue that temporary total disability could have been for no longer than three months. There would be merit in this contention, if that were all the testimony on that point. In answer to questions propounded by Judge Bryan, a member of the Commission, claimant testified:

"Q. Your disability that you have on account of the hip, was that what you were drawing compensation for from April 23rd, to Sept. 24, 1927, was you drawing on that? A. Yes, sir. Q. Your inability to work was due to the injury to the hip? A. It was due to the hip and eye both."

The record further discloses that petitioners paid compensation from April 24th without objection, and, so far as this record discloses, without any order so to do by the Industrial Commission. Under the whole record, we think there is sufficient evidence

to support the finding that temporary total disability continued to September 24th.

Under the second proposition, petitioners assert that it was error to permit physicians, who examined claimant shortly before the hearing, to testify, as follows:

"Q. Doctor, if this claimant has followed this line of work for the past several years, has been an expert riveter working on steel structured bridges and buildings, and on the construction of oil tanks made of steel, working off the ground upon scaffolds, state whether or not his present injury to his eye would prevent him from following that kind of work? Mr. Lewis: To which question the respondent and insurance carrier object as being incompetent, irrelevant, and immaterial. Judge Bryan: Objection overruled. Mr. Lewis: Exception. A. I think in the patient's present condition, it would be dangerous to do high work, where one would depend upon seeing one beam instead of two beams, and so on."

In support of this contention, petitioners cite Integrity Mutual Casualty Co. v. Garrett, 100 Okla. 185, 229 Pac. 282, wherein it was said:

"It is error for the Industrial Commission to confine its inquiry into, and base its award solely upon, the disability of the complainant to engage in the same employment in which he was engaged prior to receiving the injury."

It is generally held that an award for temporary total disability, solely on account of inability to engage in the same employment in which he was engaged at the time of his injury, and to confine the inquiry to this question, is error. However, we do not find any cases which hold that it is error to allow such evidence. It must be borne in mind that the inquiry at the time this evidence was given was as to the extent of the loss of the use of claimant's eye. This is permanent partial disability; that is, a specific injury for which claimant was entitled to compensation regardless of whether the claimant was, in fact, incapacitated from performing any work. That is, if claimant permanently lost the use of one eye to the extent of 25 per cent., then he was entitled to 25 weeks' compensation, whether or not he was prevented from working during any part of the 25 weeks.

The evidence in question had reference to claimant's condition at the time of the hearing, and had no bearing whatever on his condition during the 22 weeks for which he was paid for temporary total disability. We find no prejudicial error in the admission of this evidence. There is certainly nothing in the record to show that the inquiry was confined to this question, or that the award was based solely upon the inability of claimant to engage in the same employment in which he was engaged at the time of his injury.

The third proposition is that it was error to award claimant for 25 per cent. loss of the use of his eye, when the only competent evidence fixed the disability at 20 per cent.

This contention is based upon the testimony of Doctor Wails, who examined claimant on October 3, 1927, as to the condition of his eye. Dr. Wails is an eye specialist, and was the only expert witness. He testified as follows:

"About what percentage would you say that was impaired, Doctor? A. At the present time and from my last examination, I would say that the muscle shows approximately about 20 per cent. impaired, as near as I can pass upon it. It is pretty hard to tell the actual impairment, just how much it is really impaired, I would not think it would be much more than about 20 per cent. impairment; that seems impossible to tell; it might even be over that. Q. Would you say, Doctor, then, that this right eye was 20 per cent. disabled permanently? A. It is hard to answer that question, that eye by itself, it is the function of that eye with the other one, it is in co-ordination of that eye with the other one, if he closes his left eye, and use only the right eye, it would not probably be impaired at all, practically none by itself, but the double vision is a mechanical vision, mechanical function of the use of both eyes together, and is apparently impaired to some extent, the per cent. I would not think would be more than 20 per cent."

This opinion evidence was based upon a test which Dr. Wails made, in which he determined that claimant had what he termed double vision when looking at objects close at hand, that is, from a distance of from a few inches up to six or eight feet, which double vision covered about 25 per cent. of the field of vision. He testified that, from the tests he made, it did not appear that claimant was affected with double vision when looking at objects at a considerable distance. But from claimant's own testimony, and from tests appearing to have been made in the court room at the time of the hearing, there is some evidence tending to show that the double vision was present when looking at objects from a considerable distance, and that more than 25 per cent. of the field of vision was included. Dr. Wails testified that the double vision occurred only in the lower and right one-fourth

of the field of vision, but testified that if it should develop that the upper portion of the field of vision was affected, then the impairment would be more than 20 per cent., perhaps 40 per cent. The test made in the court room by looking at pictures hanging upon the wall tended to show double vision existing in the upper portion of the field of vision. We, therefore, conclude that there was competent evidence reasonably tending to support the finding of the Commission that the impairment was 25 per cent. There was evidence to the effect that the condition was permanent.

The fourth proposition is that the court erred in awarding compensation for 22 weeks' temporary total disability and 25 weeks' permanent partial disability; the latter, in addition to, or commencing at the expiration of, the 22 weeks allowed for temporary total disability, where the evidence is that claimant was injured in different parts of the body in one and the same accident. It is contended that, under the clause in section 7290, C. O. S. 1921, as amended by section 6, chap. 61, S. L. 1923, which reads:

"The compensation for the foregoing specific injuries shall be in lieu of all other compensation except the benefits provided in section 7288"

—claimant cannot be awarded anything for temporary total disability if his claim for permanent partial disability is to be allowed. In other words, it is claimed that the law provides a definite amount of compensation for the injury based upon wages drawn; that is, for total loss of one eye, two-thirds the per centum of the average weekly wages, not exceeding, however, $18 per week, for 100 weeks. And in case of a 25 per cent. loss of use of the eye, then for 25 per cent. of the 100 weeks, or 25 weeks, and that by the terms of the section this is to be in lieu of all other compensation except that allowed by section 7288 (medical attendance).

Petitioners suggest that the Workmen's Compensation Law of this state was taken from that of New York, and contend that the decisions of that state sustain their position on the question. They cite Marhoffer v. Marhoffer, 220 N. Y. 543, in support of their contention. Therein it was held:

"Where claimant's second finger was cut off and the thumb and index finger were severely lacerated, the injuries to the thumb and finger might constitute temporary total disability for which he would be entitled to compensation at the rate of 66⅔ per cent. of his average weekly wages to be paid during the continuance thereof, not to exceed a certain amount; the loss of the second finger constituted permanent partial disability, for which, under paragraph 3 of section 15, he would be entitled to compensation at the same rate for 30 weeks; but it was error for the Industrial Commission to award consecutive compensation for such injuries first during temporary disability, and thereafter for the full period for the permanent injury, and the award for the temporary total disability should be reversed, and that claim be dismissed."

Other cases are cited upholding that theory. Cases from this court are cited following the principle therein announced to the effect that the theory of the Workmen's Compensation Law is not indemnity for loss of a member or physical impairment, as such, but compensation for disability to work made on the basis of weekly wages.

A number of cases are cited by respondent holding that compensation may be awarded for temporary total disability, and also for permanent partial disability growing out of the same accident. But some of the cases cited are from states where the statutes specifically so provide.

We think, however, that the question here presented is conclusively settled in this state against the contention of petitioners in two cases decided by this court since the briefs were filed in the instant case.

In Smith & McDannald et al. v. State Ind. Com., 133 Okla. 77, 271 Pac. 142, it was held:

"Under section 7290, C. O. S. 1921, as amended by chapter 61, sec. 6, Session Laws 1923, the State Industrial Commission may make an award for temporary total disability, as a specific injury, notwithstanding that the same may subsequently become a permanent partial disability for which compensation may be awarded."

In Thompson v. State Ind. Commission, 138 Okla. 166, 280 Pac. 597, it is held:

"The Workmen's Compensation Act of this state, Compiled Oklahoma Statutes 1921, sections 7282 to 7340, inclusive, as amended, must be construed as a whole, and this law enacted for the protection of labor should be liberally, rather than strictly, construed, both by the Industrial Commission and the Supreme Court, so as to give effect to the intention and purpose of the law.

"Under section 7290, Compiled Oklahoma Statutes 1921, as amended by chapter 61, sec. 6, Session Laws 1923, the State Industrial Commission may make an award for temporary total disability as a specific injury, notwithstanding that the same may subsequently become a permanent partial

disability for which compensation may be awarded.

"Where the State Industrial Commission makes an award for permanent partial disability without considering or passing upon the question of temporary total disability, and the record discloses that petitioner was temporarily totally disabled for a period of time, said award will be reversed on review by this court."

In the latter case, the court refused to disturb an award for permanent partial disability, but reversed the case with directions to determine the extent of claimant's temporary total disability.

In that case, there was but a single injury, while in the instant case the injuries were separate and distinct, one to the hip, and other minor bruises, and the other one to the eye.

In Dosen v. East Butte Copper Co. (Mont.) 254 Pac. 880, quoted from with approval in Smith & McDannald v. State Ind. Com., supra, a number of authorities are cited holding, in effect, that the "in lieu" clause, similar to that in section 7290, supra, means that the compensation allowed for a specific injury, such as the permanent total loss or a permanent partial loss of the use of a member, for which compensation is allowed for a definite number of weeks, is in lieu of all other compensation for that particular injury, and does not prevent allowance of compensation for temporary total disability caused by the same or separate injuries growing out of the same accident.

The award of the Industrial Commission should be affirmed, and the petition for review denied.

BENNETT, HERR, HALL, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See Workmen's Compensation Acts —C. J. § 89, p. 96, n. 24; § 114, p. 115, n. 37; § 130, p. 124. n. 63.