### CHRISTIAN v. HANNA et al.

No. 20702. Opinion Filed July 1, 1930.

Commissioners' Opinion, Division No. 2.

Glenn O. Young, for petitioner.

Burford, Miley, Hoffman & Burford and Roy V. Lewis, for respondents.

DIFFENDAFFER, C. This is an original action in this court to review an order of the State Industrial Commission denying an award for compensation.

On July 30, 1926, petitioner was in the employ of H. E. Hanna and engaged in a hazardous occupation within the provisions of the Workmen's Compensation Act (Comp. St. 1921, sec. 7282 et seq. as amended). The Globe Indemnity Company is the insurance carrier. On the date mentioned, petitioner sustained an accidental injury in handling a board which had been used in forms for concrete work. He dropped the board on the ground and some particles of sand or cement from the board were thrown or blew into his left eye. The accident occurred about 3:30 p. m. on Friday afternoon. He continued at work the rest of the day, but did not return to work on Saturday. On the following Monday his eye was inflamed and pained him so that he went to a physician. Several particles of sand or cement were removed from the eye. The physician was not an eye specialist, and because of the inflamed condition of the eye, referred petitioner to a specialist. He examined petitioner's eye and at that time discovered an abrasion on the

cornea of the left eye, also an ulcer, and the eyelid was very much inflamed. He treated the eye for some two months, after which petitioner was sent to the University Hospital at Oklahoma City.

Application for compensation was made in due time. Hearing was had about February, 1927, and continued for taking depositions, which were filed March 22, 1927. No decision was rendered until July 28, 1927, at which time the Commission, after finding the employment in a hazardous occupation, found:

"That in the course of and arising out of his said employment, claimant, on July 30, 1926, sustained an accidental injury by having certain foreign substance enter his left eye, which said injury resulted in aggravating and accelerating a pre-existing trachoma present in claimant's eye. Said injury further resulted in claimant being totally disabled for a period of eight (8) weeks. That the average wage of claimant at the time of said injury was $4 per day."

Compensation was awarded for a period of eight weeks at $15.39 per week. No appeal was taken, and the award was paid in the sum of $123.12.

On March 2, 1929, petitioner filed a motion to reopen his claim and award additional compensation on the ground of changed conditions. The allegations of the motion with respect thereto were:

"Claimant further respectfully shows to the Commission that at the time the former award was made in favor of this claimant it appears that claimant's disability was of a temporary nature and could be corrected by an operation; and claimant respectfully shows to the Commission that he did undergo said operation, together with two additional operations, neither of which successfully corrected the condition caused from claimant's injury; that claimant has grown progressively worse; that both his eyes have become involved to such a degree that he is now wholly unable to see out of either of his eyes; that claimant's present condition is directly traceable to the injury sustained while in the employ of H. E. Hanna and engaged in a hazardous occupation covered by and subject to the provisions of the Workmen's Compensation Law."

Hearing was had on this motion beginning April 19, 1929, and continued from time to time until August 9. 1929, at which time the Commission, after citing the former findings, made the following order construing its former order:

"It is a generally known and accepted rule that in order to ascertain and determine the real intention of a judgment the whole record may be examined and construed, and in accordance with that rule, and from a review of the record, it was clearly the intention of the State Industrial Commission in its order of July 28, 1927, to find that claimant's disability resulting from the injury sustained on July 30, 1926, did not extend beyond 8 weeks, and that any other or further disability claimant might have was the result of disease found to exist at and prior to the time of the alleged injury."

Thereupon the following finding and final order were made:

"The Commission is of the opinion, on consideration of the testimony and records on file, that the testimony introduced by claimant. is insufficient to show a changed condition as a result of the injury sustained on July 30, 1926.

"It is therefore ordered: That the motion of claimant to reopen cause and award further compensation be and the same is hereby denied, and this case closed."

To review this finding and order these proceedings. were commenced by petitioner.

All the evidence taken at the first hearing, as well as that taken at the last hearing, is incorporated in the record.

At the close of the evidence taken at the last hearing, petitioner filed a request for specific findings of fact on eleven separate questions. He first complains of the refusal of the Commission to make these special findings.

It is the duty of the State Industrial Commission, under section 7294, C. O. S. 1921, as amended by section 7, chap. 61, Session Laws 1923, to make such investigation of each claim as it deems necessary and upon application of either party to order a hearing, and after such investigation or hearing, as soon as practicable, make or deny an award determining such claim, and file same in the office of the Commission, together with the statement of its conclusions of fact and rulings of law. In Glasgow v. State Industrial Commission, 120 Okla. 37, 250 Pac. 138, it was held:

"It is not intended that the strict rules of pleading and practice required in courts of record should be applied to the pleading and practice of the Industrial Commission, but pleading and procedure under the act was intended to be sufficiently flexible and practicable that men of good judgment and reasonable intelligence could apply them to accomplish the purpose intended without regard to technicalities."

And:

"Under section 7294. C. O. S. 1921, as amended by section 7, chap. 61, S. L. 1923, it

is not required that the order granting or denying an award to the claimant shall contain a finding of the facts upon which the order is based; it is necessary only that it shall contain a 'statement of its conclusion of the fact' at issue and its rulings of the law applicable."

Under the rule there stated, we conclude that it was not error for the Commission to refuse to make the special findings of fact requested, although some of them were entirely proper to include in its ultimate conclusions of fact.

It may be proper, and sometimes is necessary, to make separate findings of fact where different questions are involved, but we think in the present case but two questions were before the Commission, which were: (1) Was there a change of condition? and (2) If so, was the condition then existing due to the original injury?

It will be observed that the Commission made no finding on the question of whether or not there was a change of condition.

On this question, there is no conflict of evidence. At the first hearing all the evidence was to the effect that the condition of claimant's eye was only temporary.

The record shows that prior to the accident, claimant had never had any trouble with his eyes. That if he had any disease affecting his eyes, he was unaware of it; that when he first went to the specialist it was found that he had suffered an abrasion on the cornea of his left eye; that he also had an ulcer thereon; that the lids of his eye were highly inflamed and that at that time he was also suffering from what the physician termed "trachoma," a contagious, infectious disease of the eyes. But if claimant had this disease prior to the injury, it must have been "dormant" or "latent."

All the expert testimony was to the effect that this disease is often found to exist in a "latent" or "dormant" state and the patient may not know that the disease is present. As to whether or not the condition was deemed permanent or temporary and the effect of the sand or cement on his eye, we quote the following from the testimony of Dr. Hollis:

"Q. What was his vision, doctor? A. His vision is practically normal. I think his vision will be practically normal when the lids are cured up. Q. Doctor, getting cement in the eye such as he described to you and having this trachoma, would that aggravate and bring about the condition you found this man in on your first treatment? A. Very much so, yes. Q. And aggravate the trachoma by

trauma, it would do that wouldn't it, doctor? A. It does, yes. Q. Now, doctor, take this case as you find it and the condition you find, do you think that the disease he had was aggravated by getting cement in the left eye? A. Yes, I think so."

And:

"Q. The eyelid, upon your first examination, did it denote any trachoma itself? A. Just the inflammation there. Q. Caused by trachoma. A. The trachoma showed there had been some irritation there. Q. Some irritation? A. Yes, something that caused it—there was no edema, it was typical trachoma type. Q. From your examination of the claimant the first time, I believe you stated that his condition as far as trachoma was concerned would not have lasted more than a month or six weeks. Is that right? A. Yes."

The expert testimony also showed that in the opinion of the physician the traumatic condition of the eye, caused by the particles of cement or sand, was of a temporary nature and should ordinarily heal in from six to eight weeks.

It is apparent that it was upon this class of testimony that the Commission found in the first hearing that, although claimant was totally disabled by the accident, it was of a temporary nature, and allowed but eight weeks' compensation. However, claimant did testify at the last hearing that he was almost totally blind in his left eye at the time of the first hearing.

At the second hearing, which was nearly two years after the first, the undisputed testimony shows that claimant had almost, if not totally, lost the sight in his left eye and that his right eye had become so involved as to be almost useless, and he had but little vision in that eye, and that his condition so far as the left eye was concerned was permanent, and wholly incurable, so that there is no conflict in the evidence whatever as to the changed condition.

It is urged that the Commission erred in its order attempting to construe the first award and in its finding to the effect that it was clearly the intention of the State Industrial Commission in its order of July 28, 1927, to find that claimant's disability resulting from the injury did not extend beyond 8 weeks and that any other or further disability claimant might have was a result of disease found to exist at and prior to the time of the alleged injury.

In arriving at this conclusion it is apparent that the Commission reviewed the entire record, including the evidence taken at the first hearing.

We have carefully examined the entire record and are forced to the conclusion that the Commission is in error in its construction of the former order. It is now well settled in this state that where an employee coming within the provisions of the Workmen's Compensation Act suffers an accidental injury resulting in temporary total disability and also a specific injury, such as the total loss of a hand, foot, or an eye, or a permanent partial impairment thereof, compensation may be awarded for the temporary total disability, and in addition thereto compensation may be awarded for the specific injury, that is, the total permanent loss or partial loss of the specific member. Smith & McDannald v. State Industrial Commission, 133 Okla. 77, 271 Pac. 142; Thompson v. State Ind. Com., 138 Okla. 166, 280 Pac. 597; Hazelton Coal Co. v. St. Ind. Com., 141 Okla. 142, 284 Pac. 302; Kansas City Structural Steel Co. v. Petty, 141 Okla. 155, 284 Pac. 47.

In view of these decisions and the uncontradicted evidence at the first hearing to the effect that petitioner's injury was probably only temporary and that a cure would in all probability be effected in six or eight weeks, it is clearly apparent that the Commission intended only to allow for temporary total disability from performing labor by and on account of the injury, leaving for future determination the question of whether or not claimant would permanently lose the sight in his injured eye, either in whole or in part.

The question then arises, What was the condition of claimant's eye at the second hearing? As stated above, the evidence is in no way conflicting on the point of what the condition was. At the former hearing all the evidence was to the effect that a complete cure could and probably would be effected within a few weeks. At the later hearing all the evidence was to the effect that the loss of the use of the left eye was total and that a cure was impossible.

The next question that arises is whether or not, under the evidence in this case, claimant is entitled to the compensation allowed by law for the total loss of the use of his eye.

In Summers v. Bendelari, 128 Okla. 243, 262 Pac. 648, it was held:

"In order to reopen a case and award further compensation upon account of change of condition, the claimant must establish before the Industrial Commission that there has in fact been a change of condition since the original award was made, and further that same was due to the original injury."

But in Amerada Petroleum Corp. v. Williams, 134 Okla. 177, 272 Pac. 828, it was held:

"The power and jurisdiction of the State Industrial Commission, under the Workmen's Compensation Law, over each case submitted to it is continuing, and the Commission may, from time to time, make such modification or change of its former findings or orders relating thereto as, in its opinion, may be just; and under section 7296, C. O. S. 1921, the Commission, at any time, upon its own motion or upon the application of any party in interest, may review any award on the ground of a change in conditions, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded."

And:

"Where an employee files an application for compensation on account of an injury to his leg, but at the time of making such application and hearing had thereon the extent of the injury was not appreciated and the Commission finds that the same is a temporary total disability, and makes its award therefor, which is later affirmed by the Supreme Court, and where the claimant thereafter files his application to reopen said case and secure an increase of the award because it develops that claimant, as a result of said injury, has suffered a permanent partial disability, the Industrial Commission, under its continuing power and jurisdiction and by reason of such change of conditions, may reopen the case and make such an award as the claimant may be entitled to for such permanent partial disability. The doctrine of res judicata, by reason of the former award being affirmed by the Supreme Court, is inapplicable."

In Choctaw Portland Cement Co. v. Lamb, 79 Okla. 109, 189 Pac. 750, Mr. Justice Rainey, speaking for the court, said:

"It is a well-known fact that the nature and probable effect of an injury, in many cases, cannot immediately be determined by the most proficient physicians or surgeons, and we are confident that the Legislature had this fact in mind when it provided in section 14, art. 4, for subsequent physical examinations, and conferred jurisdiction on the Commission to modify or change its former findings or orders. The provision thus serves as a protection both to the employer and employee, and enables the Commission to change its findings and orders to effectuate justice where the amount previously awarded was either too large or too small, or where the Commission had previously erred in fixing the compensation through mistake or because of fraud practiced upon it."

The uncontradicted evidence shows a changed condition. The Commission did not find that there was or was not a changed

condition, simply saying that the testimony is insufficient to show a changed condition as a result of the injury sustained on July 30, 1926.

Again, we call attention to the fact that the evidence shows that claimant never had any trouble with his eyes prior to the accident; that he had no trachoma in an active stage prior thereto. If he had trachoma in any form, it must have been "dormant" or "latent," as the physicians term it. The uncontradicted evidence is that an injury such as claimant received would naturally augment or aggravate a case of dormant or latent trachoma.

In Miller v. St. Paul City Ry. Co. (Minn.) 68 N. W. 862, it was said:

"The evidence as to whether the disease, septicaemia, with which the plaintiff was afflicted, was caused by her injury on the car of the defendant, was not simply speculative. There was evidence in the case tending to show that it is a germ disease, and that an external blow on the body would not be the cause of introducing the germs into the body, but that the germs might exist dormant in the system, and be set in motion or 'lighted up' by an external blow or injury; and hence the plaintiff's injury was the direct inducing cause of the disease."

In State ex rel. Adriatic Mining Co. v. District Court of St. Louis County et al. (Minn.) 163 N. W. 755, a case where the trial court found:

"The 'said gonorrheal infection was introduced into the said eye * * * either at the time said particle of ore was being removed * * * or while said eye was being washed by the employee, or the same resulted from latent gonococci germs in said eyes, which by reason of the injury to the eye * * * caused subsequent inflammation and ulcer and resulting sore tissue'."

Upon appeal, it was said:

"And there can be no serious doubt that the facts, as claimed by the workman, disclose an accidental injury within the meaning of the compensation statute. And this, whether the gonorrheal infection resulted from the use of a soiled handkerchief in removing the particle from the eye, or from washing the eye with water from the trough which was used undiscriminately by the miners, or from a latent germ within the eye, set in motion and made active by the violence of the injury to the eyeball."

Oklahoma Woodchuck Lead Co. v. State Industrial Commission, 87 Okla. 263, 210 Pac. 923, is a case similar in many respects to the one here under consideration, except that there the Commission held the condition of the eye was due to the injury, and this court upon appeal said that this was the only conclusion that could be reasonably reached.

Respondents earnestly contend that the order of the Commission should be sustained, because there was in fact no change of condition. They base their contention upon the fact that claimant testified at the last hearing that at the time of the first hearing he was "tetotally blind" in his left eye. So he did. He might not have been able to see at that time, but all the expert testimony was to the effect that the condition was but temporary, and that a cure would probably be effected within a short time. Conceding the fact to be that he had lost the sight of the left eye at the time of the first hearing, it only seems to emphasize the insufficiency of the first award, and it then became the duty of the Commission, under the authority of Choctaw Portland Cement Co. v. Lamb, supra, to effectuate justice when it had previously erred in fixing the compensation through mistake.

What we have said thus far refers only to the injury to and subsequent loss of claimant's left eye. At the last hearing, it was shown that claimant had practically lost the sight of his right eye also. He was so nearly blind that he had to be led from place to place, except about the room or premises with which he was familiar. There was some attempt made to show that the condition of his right eye was connected with the injury to his left eye, and that it became inflamed or infected through "sympathy," etc. The evidence, however, we think failed to show this, or that the injury to his left eye had any direct connection with the condition of the right eye. The evidence is rather against this theory. The testimony showed that it was hardly probable that the condition of the right eye was caused by or traceable to the injury to the left.

The evidence is that trachoma is a contagious, infectious disease, caused by some germ, the exact nature of which has never been determined, since it has never yet been isolated. That the disease quite often lies dormant in the eye, for years, without the patient's knowledge. That a traumatic injury will in such cases excite the disease to virulency; that it is not considered an incurable disease, and as a rule responds to treatment in from 6 to 8 weeks. That under ordinary circumstances claimant should have recovered from the trachoma in that length of time. However, in this case claimant was given every treatment known to medical science, but nevertheless lost the

94

sight of both eyes. We think the uncontradicted evidence shows him clearly entitled to the compensation allowed by law for the permanent·loss of one eye. The construction of the former order of the Commission is without support. The changed condition of claimant's eye is shown without contradiction.

Subdivision 7 of section 7284, C. O. S. 1921, amended by section 2, chap. 61, S. L. 1923, defining compensable injury, is as follows:

" 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom."

Under this section and the authorities cited above, where an employee has or may have a latent or dormant infectious disease unknown to him, and receives an accidental injury which aggravates or excites said latent disease to virulency or activity, the injury, including the effects of the infection, is compensable under the Workmen's Compensation Act.

The finding that the testimony introduced and records on file is insufficient to show a changed condition as a result of the injury is wholly without evidence to support same, so far as the condition of claimant's left eye is concerned.

The petition should be granted, and the cause reversed, with directions to the State Industrial Commission to award further compensation in accordance herewith.

TEEHEE, HERR, and HALL, Commissioners, concur. BENNETT, Commissioner, concurs in result.

By the Court: It is so ordered.