(No. 6607.  February 17, 1940.)

SARAH B. YOUNG, Administratrix of the Estate of RUSSELL YOUNG, Deceased, Appellant, v. Mrs. EDWIN HERRINGTON and STATE INSURANCE FUND, Respondents.

[99 Pac. (2d) 441.]

184

E. B. Smith and Dale Clemons, for Appellant.

Clarence L. Hillman, for Respondents.

GIVENS, J.—Russell Young was employed as fireman and janitor at an apartment house. While so employed he wrenched or strained his back. For this he sought and received compensation for temporary partial disability from respondent State Insurance Fund, insurance carrier for his employer Mrs. Edwin Herrington.

Three years later Mr. Young petitioned for a modification of the above award on the ground of changed physical condition, contending the injury to his back aggravated and accelerated a tubercular condition of his spine, and had caused a crushing of the two vertebrae of the lumbar region and that he was thereby at least permanently partially disabled if not so totally disabled.

The board denied additional compensation on the ground the accident hereafter described, did not affect or produce his present condition. Since the hearing Mr. Young died and his widow has been substituted as appellant.

The clinical history, shown by the evidence, reflected in hypothetical questions and as found by the board, is as follows: Mr. Young at the time of the hearing, March 11, 1938, was about 66 years old, and prior to the day of the accident he had had no trouble with his lungs or back and performed manual labor and had always been well except when about 14

he injured his right wrist which thereafter bothered him and 40 years ago had it operated on. The wrist later stiffened and ankylosed and for the last 35 years would sometimes puff and swell. He had no boils or sores on his wrist until the spring of 1937 when one appeared thereon. February 16, 1935 while moving a 300-pound box about 4'x3'x3', upending, sliding and rolling it along a cement platform in the apartment house basement, he lifted in a leaning position and felt a sudden sharp pain in his back and straightening up felt a slipping sensation in the small of his back. From then on his back got progressively worse until he became bed-ridden in 1937.

Five doctors examined him, three of whom treated him for his back injury. All agree he was totally disabled at the time of the hearing and suffering from tuberculosis of the spine and that there existed a compression fracture of the second and third lumbar vertebrae. The only difference of opinion is as to what extent, if any, the accident contributed to his condition at the time of the hearing.

Doctors Falk and Smith, who treated Mr. Young for his subsequent back injury (not accident) positively stated the accident did contribute to his condition:

"Dr. Falk:

"Q. I will ask you to take into consideration all the facts I have stated (hypothetical question elaborating above history) and take into consideration your own physical findings made by you on your examination and treatment of Mr. Young and ask you to state whether or not you have any opinion what was the cause of the condition which you found him to be suffering from in the region of his first and second vertebrae?

"A. I have.

"Q. What is that opinion?

"A. Tuberculosis of the first and second lumbar vertebrae.

"Q. Will you state what your opinion is as to the cause of this condition?

"A. I consider it—consider the cause of this condition as I found it in July, 1937 was the accident that he reported as of February 1937.

"Q. February 16, 1935, is that the one you have in mind?

"A. Yes.   February 16, 1935.   That is the date he gave."
"Dr. Smith:

"A. I believe in view of the fact that Mr. Young had over a period of years an infection of the wrist, that he must have had either before or after the injury an infection more or less metastactic in the first and second lumbar vertebrael body and that his injury tremendously accelerated this disease and the bone destruction which went with it and his resultant disability.

"Q. What injury are you speaking of?

"A. I am speaking of the injury suffered by Mr. Young in lifting the heavy box on February 16, 1935.

"Q. What is you opinion as to whether or not that injury had anything to do with the condition existing in the region of the first and second lumbar vertebrae as shown by defendant's exhibit #2 on which you stated was the compression fracture?

. . . . . . . . . . . . .

"A. That injury resulted in a compression fracture of the two vertebrael bodies."

Dr. Dedman, who examined Young at the time of the accident and gave minor treatment therefor, testified to substantially the same effect.

Dr. Swindell did not treat or examine Mr. Young but testified as an expert on tuberculosis generally, as follows:

"Q. Will you state whether or not you have an opinion as to whether trauma aids in the development of infection in a bone?

"A. Yes.   I do.

"Q. Will you state what your opinion is in that regard? And also your reasons for your opinion.

"A. I think that trauma is a multiple factor not in producing the tissue changes such as you see in tuberculosis but in producing a point of least resistance whereby the tuberculosis bacillae can grow and multiply whereas under normal conditions they would not be able to survive.

. . . . . . . . . . . . .

"Q. Now if tubercle bacillae was present in the body and one would have a trauma of a bone or bones, such as in the

vertebrae, consisting of a strain, or sprain, what would be the probable result?

"A. Well, I think a person under those conditions would be more likely to develop tuberculosis at the site of the injury than one who didn't have organisms in his body.

"Q. If the area of the vertebrae which was strained or sprained was infected with tuberculosis, what would be the probable result, Doctor?

"A. I think the injury would aggravate it, most likely aggravate the tuberculosis process.

"Q. Then what would be the result, if any?

"A. I think the total process would in all likelihood be speeded up.

"Q. And what would be the progression of the disease then?

"A. I think it would likely be more rapid than if he had not had any injury."

Dr. Simonton, who examined Young shortly after the accident and undertook treatment which Young did not pursue, and Dr. Shaw who later suggested similar treatment (i. e., complete rest and immobilization of the spine) which Young did not take, stated the accident did contribute to the injurious effect of the tuberculosis at the time of the accident (i. e., February, 1935) but were doubtful that it had a lasting effect:

"Dr. Simonton:

"Q. I will ask you to state whether the condition that you found in his back was aggravated by this incident that occurred on February 16, 1936?

"A. I will have to qualify this answer. Without a doubt the accident that occurred at the time he lifted this box aggravated the condition but it did not aggravate it any more in percentage than his continued being on his feet for a period of ten days and carrying on his ordinary livelihood with the work. There is a process of continued small injury. One small injury would not progress it any further than any amount of continued moving."

. . . . . . . . . . . . . . .

"Q. Then your theory is this man had some condition of tuberculosis between the first and second lumbar which was aggravated by some degree of trauma. Is that correct?

"A. The condition which existed from approximately 1934 which was aggravated by anything other than complete immobilization.

"Q. You recognize this lifting and straining at the time this man felt this severe pain in the small of his back, in his spine, that that was a trauma which aggravated and accelerated that condition?

"A. Yes. About twice as much as a severe cold.

"Q. But it still did aggravate it?

"A. Yes relatively."

"Dr. Shaw:

"A. . . . . It is my idea, my opinion, in spite of a good many authorities in literature to the contrary that tuberculosis of the spine is not caused by, or that even a minor injury to the spine does not serve as a localization for the onset of the tuberculosis in the spine.

"That is my opinion because we see a great many people with tubercular lesions of the spine in whom there is no history of the injury. However it is possible that a rupture of a blood vessel or a tearing of the ligaments might serve as a localization. However the fact of tuberculosis of any bone, the tuberculosis starts in the bone itself near the epiphyseal plate. In order for that particular region of the bone to be injured you would have to have a fracture of the body. It is possible, I suppose this might occur but in view of all the other facts concerning tuberculosis of the spine, it is my private opinion it does not occur . . . .

.   .   .   .   .   .   .   .   .   .   .   .

"A. . . . . An injury might aggravate the disease somewhat but what I can determine from the x-ray, you don't see any increased activity, only a normal progression of the disease. It is true that some injury—If you had a diseased vertebrae—you might fracture and collapse the vertebrae from an ordinay lifting, which ordinarily would not injure it but that doesn't have any effect on the total amount of the disease.

"Q. Then the aggravation in your judgment was temporary in this case?

"A. Yes, and did not last any longer than an ordinary strain of the back or something like that.

.   .   .   .   .   .   .   .   .   .   .   .

"Q. Is it not a general pathologic factor that an injury accelerates tuberculosis. . . . . ?

"A. It would depend on the injury. . . . . If you sprained your ankle or if you sprained your back and had a tubercular back, I don't believe that would be any great factor in the ·progression of the tuberculosis of the spine but it would be naturally more so than normal. If you fell some considerable height and actually fractured your spine I should think it might be a great factor in the acceleration.

. . . . . . . . . . . .

"Q. But it (trauma) has some relation then, has it not, where there are tubercular lesions present in the blood and a man has an injury to the bone?

"A. I think it might then. Yes. Experimentally nobody has been able to produce tubercular lesions in an injured bone in animals."

. . . . . . . . . . . .

"Q. . . . . You would admit, would you not, that he did sustain some injury at that time? (i. e., February 16, 1935.)

"A. Yes, undoubtedly.

"Q. And the result was to speed up this disease of tuberculosis in the first and second lumbar vertebrae?

"A. Yes. I think possibly it might speed it up temporarily but I don't think it would accelerate the total course of the disease. There would be some local reaction for a time and the condition would heal and the disease progress normally.

"Q. But it would be impossible for you to differentiate between this temporary factor—You admit to a degree this man was injured and this condition was speeded up and aggravated?

"A. Yes."

Thus there is no dispute as to Mr. Young's condition and the extent of his injuries at the time of the hearing, namely, that he suffered an accidental injury (concededly arising out of and in the course of his employment) ; nor is it disputed that such injury did aggravate or accelerate in some measure his pre-existing disease. The only conflict in the expert opinions is as to what extent the accident contributed to his later disability, thus raising a mixed question of law and fact. (*Birdwell v. Three Forks Portland Cement Co.,*

98 Mont. 483, 40 Pac. (2d) 43; *Moffett v. Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973.)

■ Where injury results partly from accident and partly from pre-existing disease it is compensable if the accident hastened or accelerated the ultimate result, and it is immaterial that the claimant would, even if the accident had not occurred, have become totally disabled by the disease. (*Hanson v. Independent School Dist. 11–J*, 50 Ida. 81, 294 Pac. 513; *Finkelday v. Henry Heide, Inc.*, 193 App. Div. 338, 183 N. Y. Supp. 912; *Hanson v. Dickenson*, 188 Iowa, 728, 176 N. W. 823; *Republic Iron & Steel Co. v. Markiowicz*, 75 Ind. 57, 129 N. E. 710; *Utah-Idaho Central R. Co. v. Industrial Com. of Utah*, 71 Utah, 490, 267 Pac. 785; *Christian v. Hanna*, 144 Okl. 89, 289 Pac. 708; *F. H. Gilcrest Lumber Co. v. Rengler*, 109 Neb. 246, 190 N. W. 578, 28 A. L. R. 200; *Harder v. Thrift Const. Co.*, (Mo. App.) 53 S. W. (2d) 34.)

■■ Doctors Simonton and Shaw, testifying for respondents both admitted the February, 1935, accident did have some effect on Mr. Young's condition but their testimony is inconclusive and not positive or definite as to the extent to which that injury contributed to his total disability. Doctors Falk, Smith, and Swindell, testifying for claimant, were positive in their opinion the accident did contribute to his total disability.

Bearing in mind the rule that positive testimony is entitled to more weight than negative testimony (*Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 289, 41 Pac. (2d) 605; *Arenson v. Robinson*, 59 Ida. 223, 234, 82 Pac. (2d) 249) the only reasonable conclusion is that the accidental injury did contribute to Mr. Young's total disability and compensation should be awarded.

The cause is therefore reversed and remanded to the board to determine the extent of temporary and/or permanent total disability and award compensation accordingly.

Costs awarded to appellant.

Ailshie, C. J., and Holden, J., concur.

Morgan, J., deeming himself disqualified did not sit at the hearing and took no part in the decision of the case.

Budge, J., did not sit.