32328.   FIREMANS FUND INSURANCE COMPANY *et al.*
*v.* BUCHANAN.

Decided June 15, 1949.

Powell, Goldstein, Frazer & Murphy, C. Baxter Jones Jr., Newell Edenfield, for plaintiff in error.

Howell Brooke, Sam P. Burtz, contra.

MacIntyre, P. J. 1. Upon consideration of the motion to dismiss the writ of error, permission is granted counsel for the defendant in error to withdraw the same.

2. It has long been well settled that the finality of a finding of the State Board of Compensation upon the facts of a case is conclusive and binding upon the courts. We shall not encumber the reports with further pedantic enumeration of the authorities upon this point. We cite one, *Maryland Casualty Co.* v. *England,* 160 *Ga.* 810 (129 S. E. 75). The single director in awarding compensation stated: "I further find as a matter of fact that the present tubercular condition of claimant's left arm resulted from the accidental injury sustained by him March 15, 1946" (January 1, 1946?). Let us say from the outset that we are aware that experimental pathology gives no ground for considering that trauma can in any way be connected with the *causation* or localization of bone tuberculosis, and that it is generally accepted that there is no convincing clinical evidence which points to such relationship. See *The Relation between Injury and Disease,* p. 460, by Jewett V. Reed, B. S., M. D., F. A. C. S., and Charles P. Emerson, A. B., M. D., D. Sc. It seems, however, generally accepted also that trauma may aggravate an existing bone tuberculosis in a variety of different ways. An injury, as from a laceration, may cause such severe hemorrhage

that the patient's resistance to all infections, including his local bone tuberculosis, is lowered, and the tuberculosis becomes more active. Again, trauma may result in some severe, disabling, acute pyogenic (pus producing) infection elsewhere in the body, which so lowers the patient's resistance to his previously unsuspected local tuberculosis, or local tuberculous bone lesion, that an exacerbation of the latter occurs. Still again, trauma may injure. a bone at the point of either a latent or active tuberculous focus, causing the latter to progress much more rapidly than before. Ibid. As we view the record, there is not the slightest contention on the part of the claimant that the tuberculosis was incipient with the striking of his elbow against the quill box. He does not contend even by intimation that the blow to his elbow caused his pulmonary tuberculosis of which he is presently undoubtedly suffering. Dr. Wright stated in his letter of June 4, 1947, that the claimant was suffering from a *"far advanced pulmonary tuberculosis* and a tuberculous lesion of the left elbow."* It seems well established that tuberculosis is a progressive disease which even for years may give no recognizable symptoms, and since Dr. Wright only a year later found the pulmonary tuberculosis far advanced, it may be that the director was impressed that the claimant was suffering from the pulmonary tuberculosis at the time of the accident. Dr. Coker stated in his report that the claimant was not on his first visit suffering from any lung disease, though he testified on the hearing that no X-ray examination of the lungs was made. It may be that his diagnosis without the aid of X-ray was sufficient and accurate, but it was entirely within the director's province to disregard that portion of his testimony as to the presence of tuberculosis at that time. In, what seems to us, an unresponsive answer to the question of counsel for the claimant whether an injury is liable to cause a latent condition of tuberculosis to become active, the doctor replied, "I don't see how an injury to his elbow could cause tuberculosis of the lung." Frankly, neither do we, but the question of whether injury ever activates latent tuberculosis remained unanswered at that point. Taking Dr. Coker's testimony as a whole, however, we think that, taken together with Dr. Wright's statement, it warranted the director's finding that the condition of the claimant's arm resulted from the

accident in striking it against the quill box. Dr. Coker testified: "I think all of us probably are born with tuberculosis to start with, I mean a tendency to have tuberculosis" (his meaning apparently being that dormant tubercle bacilli are present in the bodies of all of us); and, at another point, "I think the bone lesion is due to the lung condition." We think that the director was authorized to find that either or both the pulmonary tuberculosis or tuberculosis of the bone was present prior to or at the time of the accident, and that the accident aggravated the condition and hastened the deleterious progress of the disease in the arm. "Where injury results partly from accident and partly from pre-existing disease it is compensable if the accident hastened or accelerated the ultimate result, and it is immaterial that the claimant would, even if the accident had not occurred, have become totally disabled by the disease." Young v. Herrington, 61 Idaho 183 (99 Pac. 2d, 441). See also U. S. Fidelity & Guaranty Co. v. Maddox, 52 Ga. App. 416 (183 S. E. 570). Dr. Coker testified also that upon the first examination of the claimant's elbow it showed a tender, swollen radial bursa (sacs containing synovial fluid, located over bony prominences exposed to friction, such as joints (knees, elbows, wrists, etc.)). At another point he stated that "the only evidence that we found there that the thing [referring either to the elbow or the olecranon—radial bursa] might be tubercular, he developed this discharging sinus." Though what we say here is unnecessary to a decision in the case, we are rather inclined to feel that the director might have inferred from this testimony that the claimant was suffering, not from a mere swollen bursa, but that the abscess or sinus was a tubercular abscess unrecognized at the time. The medical literature speaks of tubercular abscesses being unrecognized by physicians, who lance them, inevitably causing pyogenic infection which aggravates the tuberculous process. Be that as it may, however, we find no error, save several immaterial inaccuracies, pointed out with due meticulosity by counsel for the plaintiff in error, in the single director's award of compensation for the total loss of the use of the claimant's left arm.

*Judgment affirmed.* *Gardner and Townsend, JJ., concur.*