Lee, C. J., Givens and Varian, JJ., and Featherstone, D. J., concur.

(No. 5609. July 2, 1931.)

PEARL STROUSE, Respondent, v. HERCULES MINING COMPANY, a Corporation, Employer, and HARTFORD ACCIDENT AND INDEMNITY COMPANY, Surety, Appellants.

[1 Pac. (2d) 203.]

8

H. J. Hull, for Appellants.

Charles E. Horning, for Respondent.

LEE, C. J.—Claimant and respondent, Pearl Strouse, was in the employ of defendant and appellant, Hercules Mining Company, in the month of September, 1928. He was at this time thirty-five years of age and had been doing heavy manual labor ever since attaining manhood. He was known to have a scoliosis, or curvature of the spine, but had never been troubled by it. On or about September 20th, he was assigned to a job of helping carry tim-

ers used in building crib work for a motor, and shortly after this was put to operating a jack-hammer. On November 3d he was forced to discontinue work permanently because of the weak condition of his back. He filed his application for compensation with the Industrial Accident Board.

Although in his application he recited that a claim in writing describing the cause and nature of the injury complained of had been filed with the board on November 19, 1928, nothing of the sort appears in the record; and we are restricted to an examination of the evidence to discover just what his representations were.

A hearing was had before Commissioner Suppiger on March 12, 1929, resulting in a denial of compensation. On review, the entire board sustained the commissioner. The district court, on appeal, reversed the board, found that respondent's disability was wholly the result of a compensable injury by accident, and entered judgment awarding compensation for total disability: hence this joint appeal by both employer and surety company.

The two controlling findings of the board overruled and set aside by the district court were Nos. IV and V, as follows:

"IV. That about September 20, 1928, a new motor was being put into said mill and claimant was helping to put in timbers to build crib work; that the timbers so being put in were pine and tamarack wood in size 8"x8"x20 feet long, and weighing from 400 to 700 pounds each; that claimant and other laborers had to carry these timbers by means of tongs, and sometimes lift them higher than their heads; that usually three or four men carried these timbers but sometimes there was room for only two men to work; that at times more than four men lifted on said timbers; that the first day claimant helped to carry these timbers he felt no ill effects from the work, but the next day his back was very sore by evening, but on the following day he returned to work and was put to running a jack-hammer to break up the concrete base of a motor; that claimant worked all of that day and by night his

back was quite sore again; that he returned to the same work the following day, but on account of the soreness in his back had to quit during the morning shift; that he did not return to work the day after he laid off, but on the day following that he returned to work, doing no heavy lifting and not using the jack-hammer, and continued his work until about October 21, 1928, when he again commenced to use the jack-hammer on a concrete base; that he continued to use the jack-hammer for about five days when his back became so sore and lame that he had to cease work for a couple of days; that after a couple of days he returned to work for the Hercules Mining Company doing light work at repair jobs, and his back became steadily worse until November 3, 1928, when, on account of the condition of his back he became totally disabled for work and has since then been and now is totally disabled for work on account of the condition of his back.

"V. That no accident happened to claimant while in the employ of the defendant, Hercules Mining Company, and that the disability for work he now has, and has had since November 3, 1928, is not the result of a personal injury by accident arising out of and in the course of his employment with said mining company, but is the result of his spine gradually giving away under the work he has been doing, due to the scoliosis which he has had since childhood, and which has been known by him to exist for the past eight years."

The only material difference between these findings of the board and those of the district court is that the latter traced respondent's disability to a strain suffered by him while lifting heavy timbers September 20, 1928, which strain was so severe in its effect that he was unable to work for the following two days, an injury by accident arising out of and in the course of his employment, whereas, the board found that he felt no ill effects from his work on the 20th, was able to do and did do work of the same nature the following day, and operated a jack-hammer the day thereafter, being then forced to "lay-off" a couple of shifts.

In arriving at its findings, the board had before it the following evidence: relative to the heavy lifting, respondent testified:

"I first noticed my back hurting real bad when I was lifting and I noticed a sharp pain in my back when I was lifting and I had to set it down, and it kind of left me, and I got back to work the next morning and I couldn't work and I had to go home, and I was laid up two shifts with it at that time, and I didn't think it would bother me so I didn't go to the doctor, and it kept getting worse, and I had to take the jack-hammer shift the second time and drill off another motor base, and by that time I had gotten so I could not raise up at all—I just would have to take my hand and raise myself when I stooped over, and I was laid off two shifts, and I didn't have any heavy work until the 3rd of November, and I laid off and I ain't done any work."

On redirect examination he admitted that in written answers to the questions propounded by L. B. West, adjuster for appellant surety company, he had stated:

"On the first day, September 20th, this extra lifting did not bother me much, but on the next day I helped carry timbers during the entire shift and at night my back was very sore. The pain was quite severe when I went home that night."

John Ryan, pay-roll clerk of appellant mining company, whose duty it was to make out reports of accidents and to whom respondent described his alleged injury testified:

"Q. What information did he give you at the time as to how the accident occurred?

"A. Well, he said he was running a jack-hammer and the vibration caused this wrench to his back, strain to his back.

"Q. Do you remember him telling you about any one special strain he received in lifting?

"A. No, the only way I had it written and the way I remember it was just from running this jack-hammer."

Bruce Short, a co-worker with respondent, swore that on September 20th respondent, while lifting a timber, complained of a pain, set the timber down and could not continue work for some five or ten minutes; he further testified:

"Q. The rest of you just waited around, did you, until he was ready to lift again?

"A. Yes.

"Q. Did he have any other sudden strains like that during the day that you remember, that were called to your notice?

"A. No, not that I remembr of. We was subject to strains at all times handling timbers and other stuff there— we never thought about it."

It further appears that respondent had been running a jack-hammer some two and one-half days before he undertook the heavy lifting.

Dr. H. C. Mowry called as a witness by respondent testified that the latter had a marked scoliosis or curvature of the spine, congenital in its nature; that an X-ray disclosed the curvature and showed an atrophy of the vertebrae on one side and an enlargement of them on the other, and that this condition imposed pressure upon the nerves, which resulted in pain. Asked, if it was not a fact that men with such curvatures carry on their usual work, he replied: "It is possible but nearly all of them have trouble sooner or later, if they do heavy work." Describing the general effects of scoliosis, he testified:

"Well, it has been the experience of everyone who is associated with this type of work, wherein there is a deviation from the normal weight bearing of the spine and the upper part of the body, that anything that has a tendency to pull it out of line in lifting weights or in exertion of any kind, often just heavy work, eventually makes these things become painful, because where there is some bending or twisting of the spine that causes an affection of the nerves there, and sometimes without any trouble of any kind the pain comes on, and some of these cases have constant pain—we find there is many from simply a bending of the spine brings pressure over the nerves.

"Q. Do the pains come on suddenly in some of these cases?

"A. They do, yes.

"Q. It could happen, you say, without lifting at all?

"A. How is that?

"Q. It could happen, you say, without lifting at all?

"A. Well, it does happen without lifting, yes.

"Q. What would you say that ordinary manual labor would do to a man like that, would work do?

"A. It always aggravates it—it cannot help but do it, because when it is not in proper line—it might be explained like any machine where the cogs of one wheel don't exactly fit into the other—it will run for some time, but after a while it shows effects of this running out of line a little bit—this simply is just a way of mentioning it, but here the bearing of the weight condition of the upper body, it isn't in proper line there, and naturally you can see that it pulls it to one side and makes the pressure more than it should be on the side that is weakened some by this out of line condition it naturally is going to aggravate that and make it worse all the time. . . . .

"Q. In doing work of that kind would one particular strain such as he mentioned, would you say, tend to aggravate the condition more than continual labor?

"A. Well, I think that would be pretty hard to answer that question—I don't believe anybody could truthfully answer that—of course, it has to be considered in this way, that a jerk or a quick snap, or anything of that kind, would have a tendency to do more damage, but still I don't believe in case of a back that way that anyone could answer that, because continuous work might do the same thing."

Referring to respondent, he testified further:

"Q. So you would not say his incapacity was caused by that curvature of the spine exclusive of his strain from the heavy lift—you could not say that, could you?

"A. No, I couldn't.

"Q. And, as I understood you a while ago, you stated that had it not been for this heavy lifting that he was called upon to do in his work down there he might have been able to go on (I say might) at ordinary common labor for years without having to quit?

"A. Of course, all backs of this kind, we have to draw conclusions from other cases, and we know other cases sometimes do.

"Q. These go on for years?

"A. And yet right by the side of it we see another case that doesn't.

"Q. Yes; so it is just simply this—had he not done that lifting he might not be incapacitated at all now?

"A. Well, he might not—I could not answer that because I don't believe anyone could truthfully."

The burden of proof was upon respondent to establish the probable cause of his disability. (*Hawkins v. Bonner County,* 46 Ida. 739, 271 Pac. 327; *Larson v. Ohio Match Co.,* 49 Ida. 511, 289 Pac. 992.) There is no direct proof that his disability was due to the vibrations of the jack-hammer. In fact, according to respondent and his corroborating witness, Short, the first pain encountered was during the heavy lifting on September 20th. That the district court discarded the jack-hammer theory is evident from its finding "that the claimant's disability was and is the result of the strain or strains suffered by him in the heavy lifting which he did in the course of his said work for the employer, Hercules Mining Company, on or about the 20th day of September, 1928."

The board had before it the two diametrically opposed statements of respondent, his testimony at the hearing that, following the alleged strain of September 20th, "I got back to work the next morning and I couldn't work and I had to go home, and I was laid up two shifts with it at that time," and his statement to the insurance adjuster, "On the first day, September 20th, this extra lifting did not bother me much, but on the next day I helped carry timbers during the entire shift and at night my back was very sore. The pain was quite severe when I went home that night." The latter statement was made long before the hearing.

If Ryan's testimony is to be believed, respondent attributed his pain not to the special strain of timber lifting but solely to the vibrations of the jack-hammer. While

admitting that continued heavy labor would undoubtedly aggravate a scoliosis of the spine, Dr. Mowry at no time undertook to say that respondent's disability was due to the alleged strain of September 20th. On the contrary, he never went beyond possibilities. No witness other than respondent claimed that the particular lifting was the probable cause; and respondent had impeached himself. There is substantial evidence to support the board's findings; and the district court was without authority to disturb them. (C. S., sec. 6270; *Delich v. Lafferty Shingle Mill Co.*, 49 Ida. 552, 290 Pac. 204.)

Appellants cite *Hanson v. Independent School Dist.*, 50 Ida. 81, 294 Pac. 513, to support a contention that, where a disability results partly but not entirely from an alleged accident, it is the duty of the board to separate the results of the pre-existing disease or weakness from those of the accident and apportion the award accordingly. This is not the rule in Idaho but in Kentucky where a different statute prevails. C. S., sec. 6217, recognizes no such apportionment. Regardless of pre-existing conditions, if a workman's disability is precipitated by an accident arising out of his employment, which disability would in all probability not have arisen but for such accident, the statute contemplates full compensation. (*McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 788, 203 Pac. 1068; *In re Larson*, 48 Ida. 136, 143, 279 Pac. 1087.)

Judgment reversed and cause remanded, with instructions to enter judgment in accordance with the findings of the board. Costs to appellants.

Budge, Givens, Varian and McNaughton, JJ., concur.