(No. 6183. December 15, 1934.)

LARS LIBERG, Employee, Respondent, v. GENESSEE
UNION WAREHOUSE COMPANY, Employer, De-
fendant, and STATE INSURANCE FUND, Surety,
Appellant.

[38 Pac. (2d) 999.]

A. L. Morgan, for Appellant.

Orland & Goff, for Respondent.

WERNETTE, J.—This appeal is from a judgment of the district court affirming a decision of the Industrial Accident Board.

On August 30, 1933, claimant was employed by the Genessee Union Warehouse Company to operate a new home-made machine designed to treat wheat with copper carbonate to kill smut. The machine was being operated in a room with very little ventilation and was loosely constructed so that considerable quantities of copper carbonate fumes and dust escaped while in operation.

Claimant started operating the machine at about 2 o'clock in the afternoon of August 30th and continued working until about 6 o'clock, the end of the working day, with apparently no ill effects from the fumes and dust. After finishing work he went home, ate his supper, and later retired to bed. At about 10 or 11 o'clock that night he became sick, with dizziness, nausea and vomiting.

The following day he was unable to return to work, and at about noon called a Dr. Burg to attend him. The doctor

came early in the afternoon and gave him some medicine which apparently gave him relief. The next day, September 1st, claimant became worse and about noon again called Dr. Burg, who then diagnosed his case as appendicitis, and that afternoon claimant was operated on and a gangrenous appendix removed.

It is admitted by both parties that claimant was suffering with an infected appendix at the time when he started work August 30th.

The board made findings and award in favor of the claimant, which later were affirmed by the judgment of the district court, from which this appeal is prosecuted. The board, among other things, found as follows:

"That said wheat cleaning machine was for the first time used at said elevator on the 30th day of August, 1933, and that the claimant, Lars Liberg, was placed in sole charge of the operation thereof; that work began at about two o'clock in the afternoon of that day; that while the machine was operated a considerable amount of copper carbonate dust escaped from it into said room; that said dust was plainly visible to the eye and was inhaled by the claimant and caused him to cough and sneeze a great deal; that claimant continued with his work until the regular quitting time at about five o'clock in the afternoon of that day when he went to his home and had his supper; that at about ten or eleven o'clock in the evening of that day, claimant began to feel nauseated and dizzy and to vomit; that said condition continued to exist until the morning of August 31, 1933, when claimant consulted with a physician; that claimant experienced no relief from his pains and that on the next morning, to-wit, September 1, 1933, said physician was again consulted and found that claimant was suffering with appendicitis; that on that day claimant was removed to a hospital where he submitted to an operation for the removal of his appendix; that claimant remained in the hospital for sixteen days.

"That at the time when claimant was operating said wheat cleaning machine on the 30th day of August, 1933,

as above stated, he was afflicted with an infected appendix; that by reason of claimant's inhalation of said copper carbonate dust on said day, as above stated, which caused him to cough and sneeze and later in the evening to vomit, the condition of said infected appendix was disturbed and aggravated and it became necessary to remove the appendix.

''That the disturbance of said infected appendix, as above stated, was a personal injury by accident arising out of and in the course of claimant's said employment.''

A number of assignments of error have been set forth. They may all be considered together, as they relate to but one proposition, that is, whether there is sufficient competent evidence in the record to support the findings and award. The burden is upon the claimant to prove both his disability and that the injury was caused by accident arising out of and in the course of his employment. (*Vaughn v. Robertson & Thomas,* 54 Ida. 138, 29 Pac. (2d) 756; *Dunnigan v. Shields,* 52 Ida. 195, 12 Pac. (2d) 773, and cases therein cited.)

It is also a rule well established in this state that where there is sufficient competent evidence to support the board's findings, the findings will not be disturbed. (*McNeil v. Panhandle Lbr. Co.,* 34 Ida. 773, 203 Pac. 1068; *Croy v. McFarland-Brown Lbr. Co.,* 51 Ida. 32, 1 Pac. (2d) 189; *Ramsay v. Sullivan Min. Co.,* 51 Ida. 366, 6 Pac. (2d) 856; *Dunnigan v. Shields, supra; Vaughn v. Robertson & Thomas, supra.*)

The same rule applies where there is a substantial conflict in the evidence. (*Delich v. Lafferty Shingle Mill Co.,* 49 Ida. 552, 290 Pac. 204; *Taylor v. Blackwell Lbr. Co.,* 37 Ida. 707, 218 Pac. 356; *Ramsay v. Sullivan Min. Co., supra; Dunnigan v. Shields, supra.*)

Consequently, there is but one question before us for determination. Is there sufficient competent evidence to support the findings? Upon a very careful examination of the record, we find that there is not a scintilla of evidence to support the finding of the board that the inhalation of copper carbonate fumes and dust by the claimant caused him

to cough and sneeze a great deal, or at all, and we find no basis for such finding whatsoever. Yet the further finding of the board that the infected appendix was disturbed and aggravated and it became necessary to remove the same was, in part at least, based upon such finding.

Dr. Burg, who attended the claimant and assisted in performing the operation for appendicitis, was not present to testify before the board. However, by stipulation a letter written by Dr. Burg to the board was admitted in evidence and it was agreed that if he were present he would testify to the facts as set forth in such letter. The letter is as follows:

"WALTER A. BURG, M. D.
"Uniontown Washington.
"Industrial Accident Board,
"Boise, Idaho.

"Mr. Lars Lieberg requested a letter explaining his last illness. I was called to see Mr. Lieberg Aug. 30, 1 P. M. At the time he complained of headache, dizziness, dyspepsea and severe cramps in the Epegastric region. His first symptoms were nausea & vomiting. Temp. normal. Pulse slow 70. He gave a history of operating a new wheat cleaning machine. This machine was being tried out & therefore was not completely set up with the result fumes escaped into the room. After operating the machine for three hours he became dizzie and nauseated and was unable to continue his work. He returned home and I was called to see him. The pain in his Epigastric region did not localize over the appendiceal area untill two o'clock the following day. At this examination (24 hours later) he showed typical symptoms of appendicitis. The vomiting and straining, I believe were indirectly responsible for Mr. Liebergs attack of appendicitis.

"WALTER A. BURG, M. D.
"Uniontown, Wn., 2/28/34."

Dr. Burg's "attending physician's report" was also admitted in evidence, in which he states, "This is a unusual case but I feel that the Copper Carbonate poisoning was

accidental and caused by a leak in the pipe, resulting in typical symptoms of C. Carbonate poisoning. Gangrenous appendix resulting from a probable embolis shutting of the circulation to appendix.''

When Dr. Burg wrote said letter he was mistaken as to when he first attended claimant. It is conceded that the first time he attended claimant was on August 31st, and not on August 30th, as he states.

Undoubtedly Dr. Burg reached his conclusion as to what caused claimant's condition from facts of the case as given to him by the claimant, or at least what the doctor understood to be the facts. It is quite apparent from the uncontradicted and conceded facts that the doctor was mistaken or did not have a full and clear understanding as to what the actual facts really were. In his letter he states, referring to the claimant, ''after operating the machine for three hours, he became dizzy, and nauseated, and was unable to continue his work. He returned home and I was called in to see him.'' While the uncontradicted facts are that claimant continued his work until about 6 o'clock, quitting time, went home and ate his supper, retired to bed, and did not become ill until 10 or 11 o'clock that night, and did not call Dr. Burg until the next day. In the Physician's report admitted in evidence, the doctor states that claimant had typical symptoms of copper carbonate poisoning, which symptoms are described in the letter as dizziness, and nausea, which affected claimant while working in the dust and fumes, so that he was unable to continue, which clearly shows that the doctor's conclusion was based upon the wrong premise.

The testimony of both Drs. Armstrong and Magee is to the effect that the symptoms disclosed were those of appendicitis, and that the nausea and vomiting complained of by claimant were typical of the disease, and from the history given they see no relation between the copper carbonate poisoning and the symptoms disclosed, which clearly indicated the ordinary attack of appendicitis. True, both doctors testified that straining and vomiting would probably disturb an infected appendix and cause it to become aggra-

vated, but both emphatically stated that nausea and vomiting are expected as the first symptoms of appendicitis.

The full history of the claimant's case was given to Dr. Magee, and he was then asked the following questions, and gave the following answers:

"Q. Now, Doctor, in your opinion what would you say as to whether the copper carbonate fumes that Mr. Liberg inhaled there caused that appendicitis.

"A. Well, I fail to recognize the connection there. If I might explain, copper carbonate or anything else that is inhaled is taken in the same way as a general anaesthetic. The anaesthetic is in a volatile form, but this is in the form of a fine powder. It goes through the respiratory tract, gets to the lungs and is absorbed there over a great absorption area and it influences the whole system, and it is going to influence that system soon, soon after it is taken in, just like an anesthetic. It would be like a slow anaesthetic, gradually absorbed and beginning to act, and it would act within a short time after it acquisition. Now, the cases that I have cognizance of, and I have some literature on the subject here, lead me to believe that as soon as the ingestion or inhalation of this is stopped exhalation or getting rid of the poison begins and in a short period of time, not a very protracted period, the system is rid of the greater part of the poison.

"Q In your experience, Doctor, have you ever known of a case where the inhalation of copper carbonate, or we might say other fumes of the same nature, has ever been the cause of appendicitis?

"A. Cause of what?

"Q. Of appendicitis.

"A. No, I have never known of it.

"Q. Have you ever come in contact with any case ever reported in any of the medical authorities that you have studied?

"A. No, I haven't found reference to a condition of this kind."

He also testified that copper carbonate poison affects the vomiting center in the brain and that transmits it to the stomach as a result of the central effect, but from the other evidence given by the doctor it is clearly shown that such vomiting would take place at the time of inhalation of the poison, or immediately thereafter, which would be typical symptoms of copper carbonate poisoning, as indicated by Dr. Burg, when he erroneously assumed that the claimant became dizzy and nauseated at the time when he was still at work.

Dr. Armstrong was unable to answer as to whether the breathing of copper carbonate fumes and dust, as was the case with claimant, would have a tendency to cause retching of the stomach and vomiting, and then stated further that he had only seen one case in which the victim claimed that such poisoning made him sick at his stomach, but it is not disclosed as to when the vomiting took place with reference to the time that the poison was taken into the system.

From a careful examination of the record, we are satisfied that the evidence is not sufficient to support the finding of the board. The judgment is therefore reversed. Case dismissed.

Budge, C. J., Givens and Holden, JJ., and Koelsch, D. J., concur.