712 P.2d 559

**John C. NYCUM, Claimant-Appellant,**

v.

**TRIANGLE DAIRY COMPANY, Employer, Aetna Casualty & Surety, Surety, and Employers Insurance of Wausau, Surety, Defendants-Respondents.**

**No. 15409.**

Supreme Court of Idaho.

Dec. 4, 1985.

Rehearing Denied Jan. 27, 1986.

---

E. Lee Schlender, Ketchum, Idaho, for claimant-appellant.

Joseph M. Coughlan, Boise, Idaho, for defendants-respondents Triangle Dairy and Aetna Cas. & Sur.

Robert D. Lewis, Boise, Idaho, for defendants-respondents Triangle Dairy and Employer Ins. of Wausau.

BAKES, Justice.

This is an appeal from an order of the Industrial Commission denying appellant's claim for workmen's compensation benefits. Appellant contends that his flexor tenosynovitis (impairment of tendons in the hand) was contracted as a result of his employment with respondent Triangle Dairy. The commission found otherwise and held that his hand condition was causally related to appellant's diabetes and not to his employment. We have reviewed the record and conclude that the commission's order was supported by substantial, competent evidence and therefore affirm the order denying benefits.

Appellant John Nycum is a diabetic, having been insulin dependent since age 11. At age 32, Mr. Nycum began his employment with Triangle Dairy in February of 1980 as a route salesman. The job of route salesman entailed, among other things, lifting and moving cartons (wire baskets) of milk weighing approximately 50 to 60 pounds. In late July of 1980, Mr. Nycum noticed that his hands were swelling, and as his work continued throughout the summer so did the swelling and pain. His hand condition grew worse during the holiday season at the close of 1980.

On December 30, 1980, Mr. Nycum was examined by Dr. Del Pletcher an orthopedic surgeon who had treated Mr. Nycum for a similar condition in 1978, prior to his employment with Triangle.[1] Dr. Pletcher diagnosed Mr. Nycum's hand condition as acute flexor tenosynovitis (triggering of the fingers, *i.e.*, contracting of the fingers

---

1. In 1978 Mr. Nycum was employed by the U.S. Forest Service as a construction worker and trail builder. He developed flexor tenosynovitis in two fingers on his right hand while so employed. Dr. Pletcher performed surgery on the afflicted fingers, releasing the triggering tendons. Dr. Pletcher's opinion at that time was that the tenosynovitis was primarily related to Mr. Nycum's work. The 1978 surgery was successful, and claimant has suffered no tenosynovitis in either of those fingers since that time.

without being able to subsequently extend them). Unlike his similar condition in 1978, the triggering was present in fingers of both hands. Dr. Pletcher advised Mr. Nycum to cease all work activities involving the use of his hands, specifically lifting milk cartons. Mr. Nycum followed Dr. Pletcher's advice. Nevertheless, when examined by Dr. Pletcher again on January 21, 1981, Mr. Nycum reported his condition had grown worse, despite not working for nearly two weeks. Mr. Nycum ceased work altogether on January 23, 1981. Shortly thereafter, a notice of injury and claim for benefits was filed with the Industrial Commission.

A hearing on Mr. Nycum's claim for benefits was held before Commissioner Will S. Defenbach who determined that Mr. Nycum's flexor tenosynovitis was not contracted and incurred during the course of his employment with Triangle Dairy. The findings of fact and conclusions of law of the commissioner were adopted in full by the commission. The commission had before it the testimony of several doctors who examined and/or treated Mr. Nycum for his hand condition.[2] The testimony of some of the doctors was in conflict as to the underlying cause of the flexor tenosynovitis. In particular, the testimony of Dr. Pica and the testimony of Dr. Dega were in direct conflict. Dr. Pica testified that Mr. Nycum's hand problems were work related, caused by repetitive trauma to the fingers (i.e., lifting milk cartons), and not related in any way to his diabetes. Dr. Dega, on the other hand, testified that the flexor tenosynovitis was causally related to Mr. Nycum's diabetes and not in any way related to his employment.

## I

A brief history of Idaho's workmen's compensation law provides a necessary backdrop against which the facts of this case are more clearly contemplated.

Initially, the only kind of disability compensable under Idaho law was that which resulted from an "injury by accident." Because of the ambiguity and apparent narrow scope of coverage of this law, courts were constantly straining the definition of "accident" to permit compensation for *diseases* genuinely contracted as a result of employment. *See, e.g., Beaver v. Morrison-Knudsen Co.*, 55 Idaho 275, 41 P.2d 605 (1934); *Brown v. St. Joseph Lead Co.*, 60 Idaho 49, 87 P.2d 1000 (1938).

As a result of this inconsistency or confusion concerning the scope of coverage of the law, the legislature, in 1939, amended the workmen's compensation law to specifically provide a right to compensation for disablement resulting from occupational disease. 1939 Idaho Sess.Laws, ch. 161, p. 287. The legislature also clarified that a worker's right to compensation for *an injury* was limited to those injuries *"caused by an accident,"*[3] *id.*, and the term "acci-

---

**2.** In addition to Dr. Pletcher, the following physicians examined Mr. Nycum on the dates indicated: (1) Dr. Dega, August 3, 1981, a rheumatologist, who concluded that Mr. Nycum's hand condition was caused by his diabetes and not employment related activities; (2) Dr. Pica, March 8, 1982, an internist and rheumatologist, who concluded that Mr. Nycum's condition was *work related and not caused* by his diabetes since, in his opinion, Mr. Nycum had good control of his diabetes; (3) Dr. Burton, August 3, 1981, a neurologist, who found no neurological damage and concluded that Mr. Nycum's tendonitis problem was related to his diabetes and not his work since, in his opinion, Mr. Nycum did not have good control of his diabetes; (4) Dr. Frost, February, 1982, and March 7, 1983, an ophthalmologist, who only examined Mr. Nycum's eyes for any marked retinopathy, *i.e.*, he examined Mr. Nycum only for purposes of determining whether he had exercised good control over his diabetes; he concluded that he did; (5) Dr. Foss, September 10, 1981, a physician who also only examined claimant to determine control of diabetes *via* a blood hemoglobin test; he concluded that over the past three months Mr. Nycum had adequate control of his diabetes.

**3.** The addition of the words "caused" and "an" to the original language "injury by accident" made it very clear that the terms "injury" and "accident" are not synonymous as used in the statute. This Court has upheld such a construction in *Smith v. Mercy Hospital*, 60 Idaho 674, 678, 95 P.2d 580, 582 (1939), and *Swan v. Williamson*, 74 Idaho 32, 38, 257 P.2d 552, 555 (1953). In *In re Larson*, 48 Idaho 136, 142, 279 P. 1087, 1088 (1929), this Court held that "accident" was not distinct from "injury," but that

dent" was specifically defined to mean "an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs...." [4]  *Id.*

In making these changes, the legislature made it clear that compensation was permissible in two distinct situations: (1) when disability was from "an injury *caused* by an accident," and (2) when disability was from "an occupational disease." [5]  In *Bowman v. Twin Falls Construction Co., Inc.,* 99 Idaho 312, 581 P.2d 770 (1978), we held that this distinction should be maintained, stating: "[The] statute's categories of 'accident' and 'occupational disease' [are] mutually exclusive." 99 Idaho at 321, 581 P.2d at 779. Thus, workmen's compensation "is not meant or intended as life or health insurance; it is purely accident and occupational disease insurance." *Wade v. Pacific Coast Elev. Co.,* 64 Idaho 176, 183, 129 P.2d 894, 897 (1942). Indeed, the statute itself states, "The terms [injury and personal injury] shall in no case be construed to include an occupational disease...." I.C. § 72–102(14)(c).

## II

With this understanding of the state's workmen's compensation law, it becomes eminently clear that we cannot say as a matter of law that the commission's findings of fact and conclusions of law were erroneous.

Though Mr. Nycum presented his claim to the commission in the posture of both a disability resulting from an occupational disease and a disability resulting from an injury caused by an accident, the latter theory was apparently abandoned during the course of the proceeding before the hearing commissioner.  Under current law, "occupational disease" is defined as a "disease due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and peculiar to the ... employment." I.C. § 72–102(17)(a). Thus, an occupational disease must "arise from and out of the course of employment."

In making its determination of whether or not Mr. Nycum's hand condition was an occupational disease, the commission examined the testimony of several physicians. As indicated earlier, some of that testimony was conflicting as to the underlying cause of Mr. Nycum's flexor tenosynovitis. In evaluating that testimony the commission stated:

"The testimony of Doctors Pica and Dega are in direct conflict as to the cause of the Claimant's tenosynovitis. Dr. Pica testified that the Claimant's flexor tenosynovitis was the result of repetitive trauma and there was no connection whatsoever between the Claimant's diabetes and his tenosynovitis.

"Dr. Dega, on the other hand, testified that the Claimant's flexor tenosynovitis was causally related to his diabetes and not to his employment. The commissioner is persuaded that, in this case, Dr. Dega's opinion and the underlying authority and reasoning for such opinion, is more persuasive and is entitled to great-

---

the words "by accident" were used to qualify the word "injury." However, the Court was interpreting the phrase prior to its amendment, and its interpretation was plausible at that time since the words "caused" and "an" were not then present. The decision in *Aldrich v. Dole,* 43 Idaho 30, 249 P. 87 (1926), is likewise distinguishable from the interpretations in *Smith* and *Swan.*

**4.** Amendments to the law in 1971 removed the "happening suddenly" language from the definition of "accident." 1971 Idaho Sess.Laws, ch. 124, p. 426.

**5.** Under the 1939 amendments, the alleged occupational disease was compensable only if specifically enumerated in a list found in then I.C. § 43–2104. If a worker's particular disease was not listed, his claim was dismissed without reaching any of the further issues of compensability, *i.e.,* whether the disease was "due to the nature of an occupation or process in which he was employed...." 1939 Idaho Sess.Laws, ch. 161, p. 288. However, the 1971 amendments removed the exclusive nature of the list as follows: "The above enumerated occupational diseases are not to be taken as exclusive." 1971 Idaho Sess.Laws, ch. 124, p. 463.

er weight than the opinion rendered by Dr. Pica.

"The commissioner gives greater weight to the testimony of Dr. Dega and finds that the Claimant's flexor tenosynovitis is causally related to his diabetes and is not related to his employment with the Triangle Dairy Company."

■ We have repeatedly held in the past that the evaluation and weighing of conflicting testimony is a function left to the sound discretion of the factfinder, *i.e.,* the Industrial Commission, and will not be disturbed on appeal unless clearly erroneous as a matter of law. Idaho Const., Art. 5, § 9; *Liberg v. Genessee Union Warehouse Co.,* 55 Idaho 123, 126, 38 P.2d 999, 1000 (1934); *Lampe v. Zamzow's, Inc.,* 102 Idaho 126, 127, 626 P.2d 782, 783 (1981). Again, we hold that the commission's finding that claimant's hand condition was not an occupational disease is supported by substantial, competent evidence on the record and therefore is not clearly erroneous as a matter of law.

### III

Finally, appellant raises for the first time on appeal the contention that the commission mistakenly decided the case based on a theory of occupational disease. Appellant belatedly contends, in his reply brief, that the true basis for his claim is that the underlying disease (diabetes-induced flexor tenosynovitis) "was aggravated sufficiently by [his employment] to render him disabled." This Court has repeatedly upheld the well established principle that review on appeal is limited to those issues raised in the lower tribunal. With few exceptions,[6] this Court will not address issues raised for the first time on appeal. *Baldner v. Bennett's, Inc.,* 103 Idaho 458, 460, 649 P.2d 1214, 1216 (1982); *Webster v. Potlatch Forest,* 68 Idaho 1, 16, 187 P.2d 527, 536 (1947). *See also Masters v. State,* 105 Idaho 197, 668 P.2d 73 (1983) (parties are held to the theories on which a cause was tried in the lower court and may not raise additional or

new theories on appeal); *International Business Machines Corp. v. Lawhorn,* 106 Idaho 194, 677 P.2d 507 (Ct.App.1984) (even if issue was arguably raised in the lower tribunal under liberal interpretation of pleadings, if not supported by any factual showing or by submission of legal authority, it was not presented for lower court's decision and would not be considered on appeal). This case does not present one of those exceptions.

■ Even if properly before the Court, however, we note that appellant's argument must fail. As appellant correctly points out in his reply brief, Idaho case law does recognize compensability for "aggravation" of an underlying disease, but *only* if such "aggravation" results from an industrial accident. *See Carlson v. Batts,* 69 Idaho 456, 207 P.2d 1023 (1949) (bursitis of the knee of a carpenter caused by continuous pressure of carpenter's weight while working on knees finishing smooth floor not compensable). As the Court stated in *Carlson:*

"The question as to whether or not the evidence sustains the finding of an aggravation of pre-existing bodily weakness, infirmity or susceptibility, becomes relatively unimportant if the facts are not sufficient to establish that the injury was the result of an 'accident.'" *Carlson v. Batts,* 69 Idaho at 458, 207 P.2d at 1023–24.

In the case at bar appellant has not argued that he incurred an accident which resulted in an injury, nor is such an accident disclosed by the record. Indeed, appellant's argument seems to fit squarely within the situation described by this Court in an earlier decision.

"In each of the cases [relied on by appellant for the present proposition] there was either some noticeable mishap or fortuitous incident of which the employee was conscious and following which injury resulted; or else there was some sudden or manifest change in the conditions or

---

6. The noted exceptions include issues regarding jurisdiction, failure to state a claim upon which

relief can be granted, and constitutional questions.

surroundings under which the employee was working constituting the accident. Here nothing of the kind is shown. The conditions under which [appellant] was working were the same throughout the entire period of his employment. He performed his work in the same manner from day to day and was conscious of no mishap, hazard, or fortuitous occurrence nor misadventure to him or on his part. Under such circumstances, to say there was an *accident* would be to distort all definitions of the word and do violence to the common understanding of the language used by the legislature in writing [the workmen's compensation law]." *Sonson v. Arbogast,* 60 Idaho 582, 585, 94 P.2d 672, 673 (1939).

*Accord Walters v. City of Weiser,* 66 Idaho 615, 620–21, 164 P.2d 593, 595 (1945) (hard work is not an accident; there must be some untoward, unforeseen and unexpected event causing injury in order to constitute an accident).

Therefore, to the extent appellant invites us to expand the current law by reading out the "accident" requirement in "aggravation" cases, we decline to do so. To accept such an invitation would effectively render any distinction between "injury" and "occupational disease" meaningless and would constitute impermissible legislative action by the Court.

The decision of the Industrial Commission is affirmed.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, Justice, dissenting.

I respectfully dissent for the reason that the Industrial Commission, possibly due to imprecision in the claimant's focusing of the issue, has misunderstood the nature of claimant's case, which misdefinition of the issue carries through to the majority opinion.

The Commission found that the tenosynovitis was caused by the underlying diabetes and not by the employment and therefore denied all benefits.

However, the record is clear that although there was the underlying diabetes and the predisposition to tenosynovitis, it was the lifting of the milk cartons which caused the swelling and flare-up. Accordingly, the work aggravated a preexisting condition and although the claimant was undoubtedly not entitled to compensation for tenosynovitis, the claimant was entitled to temporary total or temporary partial disability during the period that the swelling incapacitated claimant from further work.

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting.

John Nycum began his employment with Triangle Dairy Company in February of 1980 as a route delivery man. In the summer of 1980 the claimant developed pain, swelling and tenderness in various fingers of his hands as the result of lifting wire milk cartons, each weighing approximately 50 to 60 pounds. He reported this discomfort to his employer. His condition worsened in December of 1980 due to holiday increased work activities. On December 30, 1980, Mr. Nycum was diagnosed as having acute flexor tenosynovitis, related to his work. Mr. Nycum worked intermittently until January 23, 1981, when he ceased altogether due to the pain and stiffness in his fingers.

Mr. Nycum had previously suffered a similar hand condition in 1978 which was surgically treated by Dr. Delbert Pletcher, orthopedic surgeon from Sun Valley, Idaho. Dr. Pletcher testified that the 1978 hand disorder was cured by the surgery conducted at that time and was not related to the 1980 problem.

After Mr. Nycum ceased work his employer filed a notice of injury and claim for benefits. To aid in the diagnosis of his problem, Mr. Nycum was seen by several doctors, including an orthopedic surgeon, general practitioner, opthomologist, internist, and a specialist in rheumatoidology. The doctors disagreed as to the underlying cause of the condition. Dr. Dega, a rheumatoidologist, and Dr. Burton, a neurolo-

gist, testified that the underlying cause of Mr. Nycum's flexor tenosynovitis was his diabetes mellitus. Both of these physicians thought that Mr. Nycum did not have good control of his diabetes as indicated by his insulin levels. Dr. Pletcher, who was Mr. Nycum's treating physician, testified that the hand condition was work-related and that according to his information, Mr. Nycum had good control of his diabetes. Dr. Frost, an opthomologist, and Dr. Foss, an internist, also testified that according to their test results Mr. Nycum had good control of his diabetes.

The surety for Triangle Dairy denied Mr. Nycum's claim for benefits on the ground that the flexor tenosynovitis was not work-related, but rather was caused by his diabetes. Mr. Nycum appealed and a hearing was conducted by Commissioner Will S. Defenbach, who determined that the claimant's flexor tenosynovitis was not contracted and incurred during the course of his employment with Triangle Diary Company. The Commission adopted his findings of fact, conclusions of law and order in full, and denied any compensation. The claimant appealed arguing that the Commission erred in its evaluation of the medical testimony. This argument is not persuasive in light of the substantial, albeit conflicting, testimony regarding the underlying cause of claimant's condition. However, the majority· is in error in failing to properly address the real issue in this case: whether the claimant's work activities aggravated and inflamed his underlying condition.

### I.

Commissioner Defenbach's findings provide a review of the testimony of the physicians:

The testimony of Drs. Pica and Dega are in direct conflict as to the cause of the claimant's flexor tenosynovitis. *Dr. Pica testified that the claimant's flexor tenosynovitis was the result of repetitive trauma* and there was no connection whatsoever between the claimant's diabetes and his flexor tenosynovitis.

*Dr. Dega,* on the other hand, *testified that the claimant's flexor tenosynovitis was causally related to his diabetes and not to his employment. The Commissioner is persuaded that,* in this case, *Dr. Dega's opinion* and the underlying authority and reasoning for such opinion, *is more persuasive and is entitled to greater weight than the opinion rendered by Dr. Pica.*

*The Commissioner gives greater weight to the testimony of Dr. Dega and finds that the claimant's flexor tenosynovitis is* causally related to his diabetes and is *not related to his employment with the Triangle Dairy Company.* Finding of Fact IX, R., Vol. 3, p. 24 (emphasis added).

From this the Commissioner concluded that the claimant had failed to meet his burden of proof.

Because the finding that the flexor tenosynovitis was caused by his diabetes mellitus is supported by substantial and competent evidence does not mean that the claimant is precluded from an award of benefits. In *Woodbury v. Arata Fruit Co.,* 64 Idaho 227, 130 P.2d 870 (1942)[1] this Court ruled, as it had been doing, that a pre-existing disease or infirmity of the employee does not disqualify a claim under the arising-out-of-employment requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. In *Woodbury,* the claimant was struck by a falling facer pan at work which aggravated and accelerated her cancerous condition. The Court stated:

The rule is well established in this jurisdiction that injury, resulting partly from accident and partly from a pre-existing disease, is compensable if the accident aggravated or accelerated the ultimate result; and it is immaterial that the claimant would, even if the accident had not occurred, become totally disabled by reason of the disease. (*Young v. Herrington,* 61 Ida. 183, 99 Pac. (2d) 441;

---

1. *Woodbury* was relied upon in *Wynn, infra.*

Hanson v. Independent School Dist. 11–J, 50 Ida. 81, 294 Pac. 513; *Beaver v. Morrison Knudsen Co.*, 55 Ida. 275, 41 Pac. (2d) 605, 97 A.L.R. 1399; *In re Larson*, 48 Ida. 136, 279 Pac. 1087; *Strouse v. Hercules Min. Co.*, 51 Ida. 7, 1 Pac. (2d) 203; *Scarborough v. Beardmore*, 52 Ida. 180, 12 Pac. (2d) 771.) *Woodbury, supra*, at 239, 130 P.2d at 875.

Larson has summarized this doctrine as follows: "This is sometimes expressed by saying that the employer takes the employee as he finds him." Larson, *Workmen's Compensation Law* § 12.21 (1985). Until today, I had thought that to have long been the rule in Idaho.

More recently we addressed a similar claim for benefits in *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 666 P.2d 629 (1983) wherein the claimant was injured while operating a front-end loader. The employer argued that there the employee's condition was not an "accident," i.e., a distinct mishap or event. This Court declined to accept that argument noting that the operation of the front-end loader subjected the claimant to almost continual and sudden jarring and shaking (repetitive trauma).

After disposing of the "accident" question in *Wynn*, this Court went on to discuss the question of whether the claimant's weak spine predisposed him to the injury and should preclude him from an award under the worker's compensation laws. This Court summarily rejected that argument:

> Although respondent Simplot invites the Court to engage in a semantic distinction analysis of whether an injury which results from repeated trauma falls within the category of occupational disease as distinguished from the category of industrial accident or neither, we decline the invitation. It is enough to note that claimant here, as indicated by the medical evidence, suffered his injury at a particular time, at a particular place, while engaged in his normal and ordinary work for his employer. *The fact that Wynn's spine may have been weak and predisposed him to a ruptured disc does not prevent an award since our compensation law does not limit awards to workmen who, prior to injury, were in sound condition and perfect health. Rather, an employer takes an employee as he finds him.* [Long string of cases cited, beginning with *Miller v. Bingham County*, 79 Idaho 87, 310 P.2d 1089 (1957).] *Wynn, supra*, at 104, 666 P.2d at 631.

Those of the trial bar who follow our worker's compensation cases will note that the author of today's opinion for the Court was the sole dissenter in *Wynn v. Simplot*, 105 Idaho 102, 666 P.2d 629 (1983), where, in concluding, he accused the majority of "substituting its own judgment for that of the commission." His comprehensive dissent paid no mind to the backbone of the majority decision, which was that "an employer takes an employee as he finds him." The employee in *Wynn* was afflicted by a bad back—a back which Justice Bakes observed got that way because of punishment inflicted by claimant's extremely strenuous lifestyle. The employee in this case, however, was afflicted with diabetes—induced flexor tenosynovitis, a disease which he did not encourage by his lifestyle. Strangely, *Wynn* goes unmentioned in Justice Bakes' opinion. What can be made of this by the trial bar, I do not know, other than that as often as a proposed opinion obtains two more votes, three does prevail. With that mathematical certainty one cannot quarrel, but whether this Court is providing any stability in this area of the law, it is difficult to ascertain. We could do so were we to blindly follow the teaching of Justice Bakes, as reviewed in *Wynn*, and now today, where he insists that we absolutely must not review the record in light of Mr. Nycum's belated contention that the underlying disease was aggravated sufficiently by his employment to render him disabled. What to make of that is not readily known, because his opinion then proceeds to declare that there was no aggravating accident which triggered the ensuing disability, citing a 1939 case which is notably among the missing on a rereading of our *Wynn*

opinion, and the string of citations at page 104 of 102 Idaho, 666 P.2d at 631. That 1939 case, *Sonson v. Arbogast*, 60 Idaho 582, 94 P.2d 672 (1939), has a singular remarkability. In all of the years since 1939, before today's use of it in the majority opinion, it has only been cited *one* time. In 1970 in *Manning v. Potlatch Forests, Inc.*, 93 Idaho 855, 477 P.2d 97, it was given slight mention as additional authority for the proposition that a claimant must be able "to show any instant [sic, "instance"] or particular episode in time when he was aware of a mishap or other causative occurrence...." 93 Idaho at 857, 477 P.2d at 99. Keeping that statement in the back of the mind, *Sonson* deserves but a second's attention. That worker's claim was based upon streptococcic pneumonia, a not unimportant fact which would have been disclosed to the average reader had the author not deleted the sentence which preceded the passage as now displayed in the Court's opinion, and which sentence introduced the entire paragraph. No one will take quarrel with that holding. Equally true, no one would take exception had the above statement from *Manning* been included in the *Wynn* string citation of authority. In *Manning*, the Court observed what it called the failure to trace a deterioration to any particular *traumatic episode*. "Compare *Dawson v. Hartwik*, 91 Idaho 561, 428 P.2d 480 (1967), where a back injury was held 'accidental' and compensable *because* its cause could be located as to time and place with sufficient certainty." 93 Idaho at 857, n. 5, 477 P.2d at 99, n. 5 (emphasis added). That language dovetails very nicely with the language in the opinion for the Court in *Wynn*, where we cited *Dawson*, going on to say of it that there "this Court affirmed a Commission award to a claimant whose injuries in part resulted from stooping to lift a case of empty bottles while he was working in his usual occupation as a bartender." 102 Idaho at 105, 666 P.2d at 632. Enough has been laid out to rest a rather overwhelming case against the majority in Mr. Nycum's case—a majority which cannot be accused of being swayed by the very first section of the Workmen's

Compensation Law, or accused of having as much concern in obtaining justice for the worker as it obviously has for technical court rules which ordinarily might be said to apply in civil actions—certainly not at all the same as informal proceedings under the Workmen's Compensation law.

When one makes an independent audit of the above discussed authority found in Justice Bakes' opinion and adds it to the authority from *Wynn*, one is brought to the inevitable conclusion that Justice Huntley is correct; the Court this day should be directing the Commission to make the small but deserved award which rightfully belongs to Mr. Nycum.